### CENTRAL OF GEORGIA RAILWAY COMPANY v. DUGGAN.

EVANS, J.  The facts of this case bring it within the decision announced
in *Central Ry. Co.* v. *Neidlinger*, 110 *Ga.* 329, wherein this court ruled
that where stock is killed, not at a public-road crossing, but some dis-
tance beyond, and the stock suddenly came on the track at a point so
nearly in front of the locomotive that, notwithstanding all possible
efforts, the progress of the train could not be arrested before the stock
was struck, the owner could not recover of the railway company in a
suit for damages, although it appeared that in approaching the crossing
the engineer did not observe the requirement of the law as to checking
the speed of the train, his failure so to do not being the proximate
cause of the injury.     *Judgment reversed.  All the Justices concur.*

Submitted November 18,—Decided December 21, 1905.

Certiorari.  Before Judge Seabrook.  Effingham superior court.
May 8, 1905.

Duggan sued the railway company, in a justice's court, for dam-
ages on account of the killing of a calf by a train on the defendant's
railroad.  At the trial he testified that he found his calf lying at
the side of the railroad after the train had passed, and that ap-
parently it had just been killed.  The defendant admitted the killing
and the value of the calf.  A witness introduced by the defendant
testified: "I am an engineer on the Central of Georgia Railway.  I
was running the engine of the passenger-train that killed Mr. Dug-
gan's calf.  .  .  On approaching Eden that morning I blew the
station signal, also the road-crossing signal, before I saw the calf.
When I first saw the calf it was about 150 yards beyond the public
crossing, about 5 or 6 feet from the track.  It got on the track and
ran some 40 or 50 feet before the engine was on it and killed it.
As soon as I saw it I blew the stock alarm and applied the brakes.
My engine was in good order, well equipped to control the train.
I could not have stopped the train as quickly, going at the speed it
was, had I reversed.  Therefore I did not reverse the engine.  I
was in schedule, going 30 miles an hour, when I first saw the calf,
and at the rate of 25 miles an hour when I struck the calf.  I blew
when I got to the road crossing; did not continue to blow till I got
to the crossing.  We are not allowed to keep on blowing when the
public crossing is in a town.  It is true that if I had had my train
under such control when I reached the crossing that I could have
stopped the train at the crossing, I would have done it and would
not have killed the calf, because I saw the calf when I was about

100 feet from the crossing. The calf was about 150 feet beyond the crossing. The reason I did not see the calf sooner was that it was behind the mail crane and about the same distance from the track as the mail crane. The mail crane is about 4 feet high and two and a half feet wide. It obstructed my view of the calf until I got in about 200 feet of the calf. I could not have done more to save the calf. But for the obstruction of the mail crane I would have had ample time to have saved it, though I was running 30 miles an hour. I blew four blasts when I got to the public crossing blow-post." John Young testified that he was fireman on the engine when the calf was struck, and was busy firing and therefore did not see anything; he only knew that the engineer blew the station signal and the road-crossing signal. No further testimony was introduced. The trial resulted in a verdict for the plaintiff. The defendant, in its petition for certiorari, the overruling of which is assigned as error, complained that the verdict was contrary to law and the evidence.

*Lawton & Cunningham* and *A. C. Wright,* for plaintiff in error.